IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KWESI B. AMONOO,

        Plaintiff,

v.

KAREN SPARLING, et al.,

        Defendants.

OPINION AND ORDER

15-cv-603-slc

*Pro se* plaintiff Kwesi B. Amonoo is proceeding in this § 1983 civil suit on claims that three correctional officers at the New Lisbon Correctional Institution (NLCI) violated his rights under RLUIPA and the First Amendment by confiscating and destroying his prayer oil on two separate occasions. On March 1, 2017, defendants filed a motion for summary judgment. Dkt. 36. After plaintiff responded to the motion, defendants filed a motion for sanctions in which they argue that this entire case should be dismissed with prejudice because plaintiff fabricated evidence in opposing summary judgment. Dkt. 54. After reviewing the documents in question, I agree with defendants that two of plaintiff's documents appear to be obvious fabrications. I also agree that dismissal with prejudice is an appropriate sanction for plaintiff's actions. Before dismissing the case, however, I will give plaintiff one more opportunity to prove that the documents are not falsified by submitting the original documents in question so that I may review them. If my review confirms that they are fabrications –- or if plaintiff fails to submit the originals by the deadline below –- I will dismiss this case with prejudice and assess a "strike" against plaintiff under 28 U.S.C. § 1915(g) for filing a frivolous lawsuit. On the other hand, if a review of the document raises questions as to their authenticity, I will issue a separate opinion addressing the merits of defendants' summary judgment arguments.

OPINION

I.  Defendants' Motion for Summary Judgment

Plaintiff's First Amendment and RLUIPA claims arise out of two separate incidents in which correctional officers confiscated and destroyed prayer oil found in his cell – in February 2014 and October 2014. Defendants concede in their summary judgment materials that they discarded oil that was confiscated from plaintiff's cell on the two dates in question.

In the February 2014 incident, the undisputed facts show that Officer Cara Holsclaw confiscated a bottle of oil, along with other items, during a random search of the cell plaintiff shared with another inmate.[1] Holsclaw apparently assumed the oil belonged to plaintiff's cell mate and, after pouring out the oil, she returned the bottle to the cell mate. To support their theory that the oil did not belong to plaintiff, defendants submitted evidence showing that plaintiff had not received any new prayer oil since 2011. Additionally, plaintiff testified at his deposition that a bottle of prayer oil typically lasts four or five months. Thus, defendants argue, plaintiff likely did not have any oil in his possession in February 2014.

The second incident, in October 2014, also occurred after a random cell search. This time, Officer Kelly Kutina confiscated a spray bottle containing a substance she could not identify. She took it to the officer's station, intending to ask plaintiff about it later. At some point, Officer Lori McDonald came upon it, saw that it was leaking, and threw it away. The undisputed facts show that plaintiff received a new bottle of prayer oil the following day from an order he had placed previously.

---

[1] Defendants say the bottle was unlabeled, while plaintiff says that it had a label from the original oil that came in the bottle. This dispute is immaterial for purposes of this order. It is undisputed that the bottle did not have plaintiff's or anyone else's name on it.

2

Defendants present compelling arguments in their summary judgment materials as to why these facts cannot sustain First Amendment or RLUIPA claims. They argue that plaintiff cannot sustain a claim regarding the February 2014 incident because: (1) the bottle of oil that was discarded belonged to plaintiff's cell mate, not plaintiff, and (2) even if it was plaintiff's oil, his religious exercise was not substantially burdened by its disposal because he could have simply bought more oil. Instead, the evidence shows that plaintiff chose to spend his money on snacks and other items and did not purchase or receive any new oil for several months. With respect to the October 2014 incident, defendants argue that plaintiff's religious exercise was not substantially burdened because he received a new bottle of oil the day after his first bottle was destroyed.

Finally, defendants argue that there is no basis for injunctive relief under RLUIPA because, contrary to the allegations in plaintiff's complaint, inmates *are* permitted to possess prayer oil so long as it is contained in its original bottle. In other words, none of plaintiff's oil would have been destroyed if it had simply been stored properly.

## II. Alleged Falsified Documents

In an attempt to raise a factual dispute, plaintiff appears to have submitted two pieces of fabricated evidence. First, plaintiff submitted a property receipt/disposition form, allegedly from 2013, purportedly showing that he receive a bottle of oil at NLCI one year before the February 2014 incident in which Officer Holsclaw disposed of oil from his cell. Dkt. 46-1. Plaintiff points to the receipt as evidence to refute defendants' position that the oil Holsclaw destroyed belonged to plaintiff's cell mate and not to him, and also to demonstrate that having

3

prayer oil on hand was essential to his religious practice. Without the 2013 receipt, DOC's property records show that the last time plaintiff possessed prayer oil was in 2011.

In support of their motion for sanctions, defendants point to evidence showing that plaintiff's 2013 property receipt is fabricated. In particular, Lynn Washetas, the Corrections Program Supervisor at NLCI, submitted a declaration stating that the 2013 property receipt is not found in the property file kept at the prison. Dkt. 36, ¶ 6. It looks different than other NLCI property receipts because it does not list the institution at the top, and is not dated at the top. Dkt. 36-1 at 3-6. The reason it looks different, defendants argue, is that the receipt is actually a receipt that was issued to plaintiff while he was at Redgranite Correctional Institution in 2009.

After comparing the two receipts, I agree that the 2013 receipt appears to be an alteration of the 2009 receipt. It appears that plaintiff took the 2009 receipt and added "1 oil" to the list of other property items he received. It also looks like he whited out "2009," changed the date at the bottom from "2-23-09" to "2-23-13," changed the unit from "F" to "B," and smudged the signature of the officer. Other than these changes, the receipts are identical, including the specific property received and destroyed by plaintiff.

The second document plaintiff appears to have fabricated is a property inventory document showing that he arrived at NLCI with two 8 ounce bottles of hair oil, which he apparently could use as prayer oil. Dkt. 46-1. He relies on the inventory to support his claim that the oil destroyed in February 2014 was his, and also to show that, because his prayers were so important to him, he always had oil on hand to use in performing his prayers. Again, however, defendants submit evidence showing that the property inventory was falsified. They

4

submit an authenticated property inventory showing what property plaintiff had when he was transferred from Redgranite to NLCI in 2011. The authenticated inventory shows that he arrived with one bottle of prayer oil and no hair oil.

Plaintiff's response to defendants' motion for sanctions is unpersuasive. He makes no coherent argument about the property inventory document. As for the property receipt, he argues that the 2009 and 2013 property receipts look so similar either because (1) he often orders the same items, or (2) defendants fabricated the 2009 receipt. Neither argument is plausible. Even if plaintiff orders the same items frequently, it is completely implausible that he both ordered and destroyed *exactly* the same items, with only the addition of prayer oil, on the same date, four years apart. His suggestion that defendants may have fabricated the 2009 property receipt is also implausible. First, he does not deny ordering or receiving the property identified on the 2009 receipt. Moreover, defendants submitted the 2009 property receipt through the declaration of Lorie Ruck, the Deputy Warden Program Assistant at Redgranite. Dkt. 55. Ruck states that she reviewed plaintiff's property files and obtained the receipt. She further identifies Sergeant Hill as the staff member who signed the property receipt. Plaintiff has identified no plausible reason why Ruck or Hill, neither of whom is not involved in this lawsuit, would have a reason to fabricate the property receipt.

In sum, I conclude that defendants have presented clear and convincing evidence that plaintiff submitted two fabricated documents with his summary judgment opposition materials. The next question is what sanction is appropriate.

## III. Appropriate Sanction

Plaintiff's decision to falsify documents and lie to the court is a gross abuse of the judicial process. Additionally, his reliance on these falsified documents reveals the frivolousness of his underlying claims. Without the falsified documents, the evidence in the record shows that the oil destroyed in February 2014 either did not even belong to plaintiff, or plaintiff used his oil so infrequently that destruction of the oil did not impose a substantial burden on the exercise of his religion. These conclusions are further supported by the evidence showing that after the oil was destroyed in February 2014, plaintiff did not purchase any oil for several months.[2] I agree that plaintiff should be sanctioned for his actions.

Defendants urge the court to sanction plaintiff by dismissing his claims with prejudice and closing this case. The court's authority to dismiss a case for a party's false allegations is well established. *See Neal v. LaRiva*, 765 F.3d 788, 790 (7th Cir. 2014) (dismissing case, imposing fine and referring to United States Attorney for possible prosecution of perjury after concluding that the plaintiff had engaged in a pattern of making false allegations); *Riviera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014) (dismissing case and referring to United States Attorney for possible perjury prosecution); *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (affirming district court's inherent authority for dismissing case when prisoner plaintiff lied about the existence of

---

[2] Notably, the falsified evidence does not necessarily help plaintiff's claims. In relying on the falsified property inventory, plaintiff is essentially arguing that he arrived at NLCI in March 2011 with 16 ounces of hair oil and 1 ounce of prayer oil. Given that plaintiff stated at his deposition that 1 ounce of oil lasts him 4 or 5 months, this leads to the conclusion that he would have had ample oil left after 1 ounce of oil was destroyed in February and October 2014. Nonetheless, the court of appeals has stated that "we do not require a district court to measure the impact on the litigation of a wrongdoer's willful misconduct before it issues a dismissal sanction. . . [A] district court's inherent power to sanction for violations of the judicial process is permissible exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 796-97 (7th Cir. 2009).

6

other lawsuits); *Allen v. Chicago Transit Authority*, 317 F.3d 696, 703 (7th Cir. 2003) ("Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case.").

Before dismissing a case, however, courts must consider whether lesser sanctions are adequate. In this case, I believe that a lesser sanction would not be adequate or effective. As the court of appeals has stated, "perjury is among the worst kinds of [litigation] misconduct." *Rivera*, 767 F.3d at 686. Further, "[m]onetary sanctions are generally not as effective against a pro se plaintiff proceeding as a pauper." *Hoskins*, 633 F.3d at 543. Simply excluding the fabricated evidence would likewise not be an adequate sanction because it would not serve as a deterrent to falsifying evidence in the future.

Accordingly, I conclude that, if I confirm that plaintiff falsified the evidence, dismissal is the most appropriate sanction. In addition, because the undisputed facts and plaintiff's apparent attempts to falsify evidence show that this case was frivolous, I also believe plaintiff should be assessed a "strike" under 28 U.S.C. § 1915(g). If plaintiff receives three strikes, he will be unable to proceed *in forma pauperis* in federal court unless he is in imminent danger of serious physical injury.

However, before imposing any sanction, I will give plaintiff one final opportunity to prove that his documents are not falsified. He may do so by submitting the original 2013 property receipt and his property inventory. (At this point, plaintiff has only submitted a photocopy of the falsified 2013 receipt.) I will review the documents to determine whether there is any basis at all for believing that the documents were not falsified. If plaintiff fails to submit the originals or if it is clear from the originals that they are falsified, I will dismiss this case with prejudice and assess a strike against plaintiff.

7

ORDER

IT IS ORDERED that Plaintiff Kwesi B. Amonoo may have until June 30, 2017 to submit the original 2013 property receipt and property inventory as discussed in this order. If he fails to submit the originals by that date, the court will dismiss this case with prejudice and will assess a strike against plaintiff under 28 U.S.C. § 1915(g).

Entered this 21st of June, 2017

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge